Pettingell, J.
Contract to recover money deposited by the plaintiff in accordance with an agreement to purchase real estate. The plaintiff and the defendant signed an agreement whereby the defendant was to sell, and the plaintiff to buy, a certain parcel of land in the City of Lynn. One of the terms of the agreement was that the defendant was to erect on the land “a standard size garage for one car”. As the parties realized that a municipal *32 permit for the garage would he necessary, and that this might cause delays, the contract was made with the understanding that time was not to be of the essence. This understanding, although not incorporated in the agreement, is the law of the case because of an agreement made by counsel at the trial, and a ruling to that effect, made by the trial judge at the request of the defendant, and not appealed from by the plaintiff.
The controversy between the parties arises over the garage and the fact, now definitely apparent, that there is not on the land in question enough room for such a garage as the parties had in mind, if the restrictions contained in the municipal permit, officially issued, are to be observed.
After the agreement of sale was obtained, the defendant made application for the necessary permit for the garage. There was objection from third parties which necessitated hearings. In the meantime the defendant purchased a second hand metal garage, some years old, said to be at the time of its manufacture a standard size one car garage, in size, ten by sixteen feet. There was testimony from a manufacturer of metal garages that in January, 1940, the time of the agreement, there was no such thing as “a standard size garage for one car”, that he never manufactured a garage, ten by sixteen; that the size he built was nine feet by sixteen feet, four inches, and that he stopped building garages of that size two or three years before the trial, that in January 1940, he was selling garages nine feet by sixteen in size, and that a garage nine feet by sixteen feet four inches was not, in his consideration, a standard size one car garage. There was other testimony that the 1938 car of the plaintiff’s wife, for which the garage was intended, was seventeen feet long. The trial judge found as fact that at the time of the contract the *33 garage bought by the defendant was not a standard size one car garage.
When the defendant’s permit was finally issued and received, it prescribed the size of the garage as nine feet by eighteen feet, and prescribed its location on the lot, with designated distances the garage was to be placed from the side and rear lines of the lot. If thus placed, the garage would then so interfere with the rear entrance of the house, “that it would go into the bulkhead and they would have hardly any room to get into the back porch; that they would have to shift the back steps”. If the garage were erected eight feet in width, instead of the nine feet called for by the permit, there would be “just about room to walk through to their back steps”.
No contention has been made by the defendant that it would be possible physically to use the bulkhead and the back steps, if the garage were built as specified in the permit. The defendant testified that “he was willing to put the garage on the place designated by the permit but it would interfere with the bulkhead which could not be used very well”. The plaintiff said that he did not want it to go there and interfere with the building.
There was much talle between the parties and no garage was ever built. The plaintiff who had moved in in February, moved out in April. The permit for the garage was mailed to the defendant, March 23, 1930. The trial judge found as fact, which is not challenged by any request for a ruling, that the plaintiff repudiated the contract.
He found, also, that it was a contract which could not legally be performed; that both parties had a right to repudiate it; and that the plaintiff was entitled to the return of his deposit. He made, also, a lengthy, detailed find *34 ing of fact from which the foregoing statements of fact are largely taken.
It is apparent that the contract which the parties made, while possible of fulfillment as made, could not be performed without serious injury to the house on the land, nor without a considerable impairment of its use. The installation of the garage as prescribed by the permit meant not only a disfiguring appearance of the premises but the impossibility of a normal use of the rear entrances.
When the situation is carefully analyzed it is to be seen that in making the contract both parties acted upon the theory that there was available room on the land for a garage such as each had in mind, one large enough to hold an ordinary standard size car. In the sense that the garage contemplated by the parties could not be legally built, because no permit could be secured for it, the trial judge’s finding of fact was right. The garage which could be bruit under the permit, was something, as to location and its effect upon the house on the land, which the parties never had in mind. As to that effect of the contract there was no meeting of the minds. Bridgewater Iron Co. v. Enterprise Ins. Co., 134 Mass. 433, at 436. Hecht v. Bacheller, 147 Mass. 335, at 338. Jeselsohn v. Park Trust Co., 241 Mass. 388, at 392.
It is apparent, therefore, that the parties in making their contract, were acting upon a mutual mistake of fact, believing that there was land sufficient in amount for what they were contracting to do. There is nothing to show that when the contract was made their states of mind were not the same; neither was there anything in the evidence which shows negligence on the part of either plaintiff or defendant. The result of the application of the requirements for a permit to the available space was not a matter readily ap *35 parent to the ordinary individual. The general finding of the trial judge imports a finding that there was no negligence. Upon the testimony the trial judge warrantable* could have found that a mutual mistake existed.
One of the leading cases in Massachusetts involving the issue of the impossibility of the performance of a contract is Rowe v. Peabody, 207 Mass. 226, in which the court said, at page 233,
“One who chooses to contract absolutely for the performance of a certain thing is not to be excused from such performance, in the absence of any other ground, merely because it either was originally or has since become impossible of execution.”
Hawkes v. Kehoe, 193 Mass. 419, at 423. John Soley & Sons v. Jones, 208 Mass. 561, at 567. McDonough v. Almy, 218 Mass. 409, at 415. Welch v. Phillips, 224 Mass. 267, at 268. N. J. Magnan Co. v. Fuller, 222 Mass. 530, at 533. Haigh Hall Steamship Co. v. Andersen, 246 Mass. 34, at 38, 39. Beacon Tool &c Co. v. National &c Co., 252 Mass. 88, at 90.
In Rowe v. Peabody, 207 Mass. 256, the court applied to the facts in that case the principle of law cited, “in the absence of any other ground”. In another case, in which the same principle of law was applied, N. J. Magnan Co. v. Fuller, 222 Mass. 530, the court, at page 533, mentions two grounds which make the rule inapplicable. “If, without a special agreement upon that point, he makes a general contract without fraud or mutual mistake, he has bound himself to do the work”. Fraud does not enter into this case, but mistake is of its essence.
In the case at bar, the trial judge’s “findings” that both parties had a right to repudiate the contract was actually a ruling of law, warranted by the facts specifically found *36 by the trial judge and already recited, which demonstrate that such a mutual mistake actuated the parties.
A mutual mistake of fact underlying a contract may be in equity a ground for the reformation of a deed or the cancellation of a contract. Wilcox v. Lucas, 121 Mass. 21, at 25. “The phrase ‘mutual mistake’ as used in equity, means a mistake common to all the parties to a written contract or instrument, and it usually relates to a mistake concerning the contents or the legal effect of the contract or instrument”. Page v. Higgins, 150 Mass. 27, at 30, 31. Keene v. Demelman, 172 Mass. 17, at 22. Livingstone v. Murphy, 187 Mass. 315, at 317. Long v. Athol, 196 Mass. 497, at 504, 505, 508. Reggio v. Warren, 207 Mass. 525, at 533, 534. Eustis Manufacturing Co. v. Saco Brick Co., 198 Mass. 212, at 218, 219. Dzuris v. Pierce, 216 Mass. 132, at 135. Jeselsohn v. Park Trust Co., 241 Mass. 388, at 392. Barrell v. Britton, 252 Mass. 504, at 508. Martin v. Jablonski, 253 Mass. 451, at 453. Perry v. Athens, 256 Mass. 191, at 193, 194. Perkins’s Case, 278 Mass. 294, at 300, 301. Marlborough v. Snow, 301 Mass. 429, at 430.
It is a general rule that money paid by mistake can be recovered at law in an action of contract. Garland v. Salem Bank, 9 Mass. 408, at 414. Haven v. Foster, 9 Pick. 112, at 126, 127, 135. Commonwealth v. Haupt, 10 Allen 38, at 45. Stuart v. Sears, 119 Mass. 143, at 145. Merchants Ins. Co. v. Abbott, 131 Mass. 397, at 399. Blanchard v. Low, 164 Mass. 118, at 121. First National Bank of Minneapolis v. City National Bank of Holyoke, 182 Mass. 130, at 134. Montgomery Co. v. Atlantic Lumber Co., 206 Mass. 144, at 155. Gold Brand Confectionery, Inc. v. Dimick, 276 Mass. 386, at 389. Town of Brookline v. Crane Construction Co., 285 Mass. 558, at 562.
*37 In particular cases, recovery in contract has been allowed of money paid for the purchase of land where the transaction has failed because of some valid reason amounting to a legal bar to successful performance. In Shearer v. Fowler, 7 Mass. 31, the plaintiff was allowed to recover where the deed was found to be of no effect because the grantor did not have the power to convey which the parties had thought she had. The court said, at page 35, “whenever money is paid in consideration of a contract, which contract is void for want of power in one of the parties, or for any cause, other than fraud or illegality in the contract, natural justice dictates that the money so paid shall be refunded; and there is no principle of law to prevent the operation of so equitable a rule.’ ’ In Earle De Witt, 6 Allen 520, at 543, 544, the principle is discussed and several cases following the rule are cited. In Cardinal v. Hadley, 158 Mass. 352, at 354, a purchaser of land was allowed to recover an overpayment of the purchase price which he had paid, induced by a mistake in the computation of the purchase price. Recoveries of a similar nature have been allowed in land cases in equity, following mistakes of that nature. Jeselsohn v. Park Trust Co., 241 Mass. 388, at 392. Marlborough v. Snow, 301 Mass. 429, at 430.
The plaintiff’s recovery warrantably can be based, also, on the ground of the impossibility of a performance of the contract by the defendant. Cochrane v. Forbes, 257 Mass. 135, at 150. Bucknam v. American Express Co., 262 Mass. 299, at 301. “ The right which he asserts of treating his failure to receive the promised consideration as entitling him to avoid or disregard the contract, and claim, not damages for a breach, but a restoration of the consideration that he furnished or its value exists only where the failure *38 of consideration ‘amounts to an abrogation of the contract, or * * * goes to the essence of it, or takes away its foundation’.” Plumer v. Houghton & Dutton Co., 281 Mass. 173, at 175, 176, and cases cited.
Whether his right be based upon such a failure of consideration, or purely upon mistake, the underlying basis is essentially the same, an attempt of both parties to accomplish something which was so fundamentally impossible, that performance of the contract will substantially deteriorate the present value and usefulness of the property. In other words there was a failure of consideration through the inability of the seller to perform his contract owing to the mistake of fact.
The error relied upon by the defendant is the denial of three requested rulings, as follows.
“4. The plaintiff having failed to perform the terms and conditions of said contract on his part to be done, kept and performed cannot recover thereon.”
“8. The evidence does not warrant the. court in finding that the plaintiff has proved his readiness, willingness and/or ability to perform the terms and conditions of' said contract on his part to be done, kept and performed, and the plaintiff, therefore, cannot recover in this action or for any part payment or deposit he has made under the contract.”
“13. The conduct of the plaintiff in dealing with. DeSisto to erect a cement block garage on the premises relieved the defendant from proceeding further to place a standard size one-car garage thereon and was a waiver of the plaintiff’s right to object if the defendant did not do so.”
The first two requests are disposed of by what has been said already. The right of the plaintiff to abandon the contract, if there was a mistake of fact going to its es *39 sentíais, or a failure of consideration, and to recover what he has paid in on account of the contract has been fully discussed. The finding’s of fact made by the trial judge make the rulings requested immaterial and inapplicable.
The other request raises the question whether the plaintiff’s conduct amounted to a waiver. Waiver is ordinarily a question of fact and not of law.
Carnigg v. Carr, 167 Mass. 544, at 548. Surburban Land Co. Inc. v. Brown, 237 Mass. 166, at 168. St. John Bros. Co. v. Falkson, 237 Mass. 399, at 402. Samuel v. Page-Storms Drop Forge Co., 243 Mass. 133, at 136. Moss v. Old Colony Trust Co., 246 Mass. 139, at 151. Nashua River Paper Co. v. Lindsay, 249 Mass. 365, at 368. Reid v. Doherty, 273 Mass. 388, at 389: Kennedy Bros. Inc. v. Bird, 281 Mass. 477, at 485. Forman v. Hamilburg, 300 Mass. 138, at 142. In a case like the one at bar, waiver is an affirmative defence with a burden upon the plaintiff to establish it; its proof rests upon oral testimony and inferences of fact, making it peculiarly a question of fact. Wood v. Blanchard, 212 Mass. 53, at 56. Ledoux v. Lariviere, 261 Mass. 242, at 244. Waiver, here, was essentially a question of fact and there was no error in the denial of the request.
No prejudicial error appearing, the report is to be dismissed.